## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | |
|---|---|
| ROBERT CURTIS, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )   Docket No. 2:14-cv-303-NT |
| | ) |
| SCHOLARSHIP STORAGE INC., | ) |
| et al., | ) |
| Defendants | ) |

## ORDER ON PLAINTIFFS' MOTION
## FOR CONDITIONAL CERTIFICATION

Current and former drivers in Maine for Scholarship Storage Inc., doing business as Business as Usual ("**BAU**"), have brought this lawsuit alleging that BAU and Michael Williams, owner of BAU, have violated the Fair Labor Standards Act ("**FLSA**") by misclassifying them as independent contractors. The drivers allege that as a result of the misclassification: (1) unlawful deductions are being taken from their pay; (2) they are paying expenses that should be borne by BAU; (3) they are not paid for all hours worked; and (4) they are not paid overtime for hours worked in excess of 40 hours per week. The Plaintiffs have moved pursuant to 29 U.S.C. § 216(b) to conditionally certify this action as a collective action under the FLSA and to provide notice to all potential opt-in members. The Defendants object to the conditional certification. I **GRANT** the motion for conditional certification.

# DISCUSSION

## I.  FLSA Conditional Certification

Determining ultimately whether the Defendants owe overtime pay to these workers under the FLSA depends on whether they are "independent contractors" or "employees." The FLSA requires employers to pay a minimum wage to "employees" for hours worked and pay overtime compensation to "employees" who work more than forty hours per week. 29 U.S.C. §§ 206, 207. To enforce these requirements, similarly situated employees may sue collectively for violations of the statute. 29 U.S.C. § 216(b). A two-step process determines whether a proposed group of plaintiffs is "similarly situated" and therefore qualified to proceed as a conditional collective action. *See Prescott v. Prudential Ins. Co.*, 729 F. Supp. 2d 357, 364 (D. Me. 2010) (citing *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 913 n.2 (5th Cir. 2008)); *Kane v. Gage Merch. Servs., Inc.*, 138 F. Supp. 2d 212, 214 (D. Mass. 2001). In the first step, assessed early in the litigation, the plaintiffs need make only a "modest factual showing" that, with similar but not necessarily identical jobs, they suffered injuries under a common unlawful policy or plan. *See Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 547 (6th Cir. 2006) (citations omitted). If they make this showing, then notice can go out inviting other similarly situated workers to "opt into" the collective action. *Id.* After discovery takes place, a court then must—at the second stage—"make a factual determination as to whether there are similarly-situated employees who have opted in" and whether it is thus appropriate to continue to permit the case to

proceed as a collective action. *Sandoz*, 533 F.3d at 915 n.2; *see Comer*, 454 F.3d at 546-47.

## II. Whether the Plaintiffs are "Similarly Situated"

Plaintiffs Robert Curtis and Benjamin Krauter propose the following FLSA collective:

> All individuals who have worked, or are working, as shuttle or delivery drivers at Scholarship Storage, Inc. d/b/a Business as Usual and based in the State of Maine since July 23, 2011.

Proposed Notice to Class and Opt-In Consent Form ("**Notice**") at 1 (ECF No. 17-1).[1] The Defendants object to conditional certification on the grounds that: (1) the shuttle and delivery drivers performed different tasks; (2) even within the delivery drivers group there were different routes, hours, and compensation; and (3) there is no evidence of a common plan. Defs.' Opp'n. To Pls.' Mot. for Conditional Certification 7 (ECF No. 25). The question for me under 29 U.S.C. §216(b) is whether the workers in the proposed collective are "similarly situated." [2]

---

[1]    The Defendants object to the definition of the collective proposed by the Plaintiffs in their Motion for Conditional Certification because it uses the term "employees." I have used the definition of the collective that the Plaintiffs provided in their notice form.

[2]    To resolve the underlying substantive question of whether an individual is an employee under the FLSA, courts apply the economic realities test derived from *Rutherford Food Corp. v. McComb*, 331 U.S. 722 (1947), which takes into account: (1) the degree of control exercised by the employer over the worker; (2) the worker's opportunity for profit or loss; (3) the worker's investment in the business; (4) the degree of skill and independent initiative required to perform the work; (5) the permanence or duration of the working relationship; and (6) the extent to which the work is an integral part of the employer's business. *Bolduc v. Nat'l Semiconductor Corp.*, 35 F. Supp. 2d 106, 112 (D. Me. 1998). I will have to apply the economic realities factors when ultimately determining whether the workers are employees or independent contractors, but the question at this stage is whether the workers are similarly situated. Although there is some disagreement among courts about whether to apply the economic realities test on conditional certification, examining whether the economic realities factors "var[y] in material respects throughout the proposed class" can be useful in determining whether the members are "similarly situated." *In re FedEx Ground Package Sys., Inc.*, 662 F. Supp. 2d 1069, 1083 (N.D. Ind. 2009). I will use the economic realities factors to the extent they are useful to the "similarly situated" inquiry since the record at this stage makes that analysis possible. *Compare Spellman v.*

BAU supplies delivery services for clients, including Omnicare, Inc., a company located in Westbrook, Maine, which provides pharmaceutical products and services to health care facilities, including nursing homes, throughout the State of Maine. Compl. ¶ 10 (ECF No. 1). Omnicare fills prescriptions for patients and residents at health care facilities in Maine and accepts return prescriptions. Krauter Decl. ¶¶ 4, 9 (ECF No. 17-6); Curtis Decl. ¶¶ 5, 10 (ECF No. 17-5); Lowell Decl. ¶¶ 4, 10 (ECF No. 17-7); Pepin Decl. ¶¶ 4, 10 (ECF No. 17-8); Williams Decl. ¶¶ 4, 10 (ECF No. 17-9); A. Abdi Decl. ¶ 4 (ECF No. 17-3); and G. Abdi Decl. ¶ 4 (ECF No. 17-4). BAU supplies the drivers who transport medical prescriptions from Omnicare in Westbrook to health care facilities throughout Maine.[3] Curtis Decl. ¶ 3; Krauter Decl. ¶ 3; Lowell Decl. ¶ 3; Williams Decl. ¶ 3; A. Abdi Decl. ¶ 3; G. Abdi Decl. ¶ 3; Pepin Decl. ¶ 3. In order to drive for BAU, the Plaintiffs are required to sign agreements stating that the Plaintiffs are independent contractors. Curtis Decl. ¶ 23; Krauter

---

*Am. Eagle Express, Inc.*, No. 10-1764, 2011 WL 4102301, at *1 (E.D. Pa. May 18, 2011) (conditionally certifying a group of delivery drivers over a three state area without analyzing economic reality factors); *Edwards v. Multiband Corp.*, No. 10-2826, 2011 WL 117232, at *2 (D. Minn. Jan 13, 2011) (plaintiffs must establish a "colorable basis for their claim" that they were "victims of a single . . . policy or plan"; they need not be identical but only similarly situated to putative class members); *In re Penthouse Exec. Club Comp. Litig.*, No. 10-1145, 2010 WL 4340255, at *4 (S.D.N.Y. Oct. 27, 2010) (if plaintiffs who have similar job responsibilities and performed services for the same owner do "not merit at least preliminary class treatment, one would expect that class treatment would rarely be granted in FLSA actions"); *with Bamgbose v. Delta-T Group, Inc.*, 684 F. Supp. 2d 660, 668-69 (E.D. Pa. 2010) (court analyzed economic realities factors at the conditional certification stage in order to determine whether health care workers were similarly situated under the FLSA); *Kerce v. West Telemarketing Corp.*, 575 F. Supp. 2d 1354, 1360-62 (S.D. Ga. 2008) (court analyzed economic realities factors to find telemarketing agents were similarly situated and granted conditional certification under the FLSA).

[3]    The Plaintiffs allege that at any given time during the relevant period, BAU had approximately 25 drivers in Maine. Compl. ¶ 33. The Plaintiffs estimate that as a result of turnover, BAU had more than 50 delivery and shuttle drivers over the class period. Compl. ¶ 33.

Decl. ¶ 22; Lowell Decl. ¶ 24; Pepin Decl. ¶ 21; Williams Decl. ¶ 21; A. Abdi Decl. ¶ 22; G. Abdi Decl. ¶ 22.

BAU requires the southern Maine delivery and shuttle drivers to report to the Omnicare facility in Westbrook in advance of their work schedule—anywhere from 30 minutes to two hours before the drivers can leave the Omnicare facility. Curtis Decl. ¶ 6; Krauter Decl. ¶ 5; Lowell Decl. ¶ 6; A. Abdi Decl. ¶ 6; G. Abdi Decl. ¶ 6; Pepin Decl. ¶6. During this wait time, the drivers are required to pull prescriptions for their route as set forth on a list, prepare the manifest, and seal the prescriptions in a bag. Curtis Decl. ¶ 6; Krauter Decl. ¶ 5; Lowell Decl. ¶ 6; A. Abdi Decl. ¶ 6; G. Abdi Decl. ¶ 6; Pepin Decl. ¶ 6.   BAU does not pay the drivers for their wait time or their work at the Omnicare facility.[4] Curtis Decl. ¶ 6; Krauter Decl. ¶ 5; Lowell Decl. ¶ 6; A. Abdi Decl. ¶ 6; G. Abdi Decl. ¶ 6; Pepin Decl. ¶ 6. After prescriptions are sorted and sealed at the Omnicare facility, the delivery drivers for BAU travel directly from Westbrook to the health care facilities served by Omnicare in southern Maine. Krauter Decl. ¶ 4; Lowell Decl. ¶ 4; A. Abdi Decl. ¶ 4; G. Abdi Decl. ¶ 4; Pepin Decl. ¶ 4. The shuttle drivers, on the other hand, notify the central Maine delivery drivers that they were leaving the Omnicare facility and arrange to meet at a locked storage unit at Mayflower Storage in Augusta. Curtis Decl. ¶ 3; Williams Decl. ¶ 6.

The Augusta-based delivery drivers report to Mayflower Storage within one half to one hour before the shuttle drivers' scheduled arrival.  Curtis Decl. ¶ 3;

---

[4]      BAU has recently stopped requiring drivers to gather cargo and has begun to make some payments to drivers for waiting time in excess of 45 minutes. Pepin Decl. ¶ 6; Curtis Decl. ¶ 6; Lowell Decl. ¶ 6.

Williams Decl. ¶ 6. When the shuttle drivers arrive, they provide the Augusta-based delivery drivers with prescriptions for delivery to Omnicare clients in central Maine on routes assigned by BAU. Curtis Decl. ¶ 3; Williams Decl. ¶ 6.  BAU follows a similar process with respect to drivers who make deliveries to Omnicare clients in northern Maine. Compl. ¶ 17. The shuttle drivers call the northern Maine delivery drivers based in Bangor to let them know they are leaving Omnicare and the northern Maine delivery drivers then meet the shuttle drivers at the Bangor locked storage unit within one hour of the shuttle drivers' scheduled arrival. Compl. ¶¶ 15-17. When the shuttle drivers arrive, they provide the Bangor-based delivery drivers with prescriptions for Omnicare clients in northern Maine on routes assigned by BAU. Compl. ¶¶ 15-17.  BAU does not pay the drivers for their time waiting for the shuttle drivers to arrive. Williams Decl. ¶ 6.

After taking possession of the prescriptions, the drivers cannot decide when to make deliveries to the health care facilities on their routes.  Krauter Decl. ¶ 7; Curtis Decl. ¶ 8; Lowell Decl. ¶¶ 8, 19;  Williams Decl. ¶¶ 8, 17;  A. Abdi Decl. ¶¶ 8, 18;  G. Abdi Decl. ¶¶ 8, 18; Pepin Decl. ¶¶ 8, 18.  After completing their deliveries, the southern Maine drivers are required to return immediately to the Omnicare facility in Westbrook. Similarly, the central Maine drivers are required to return to the Augusta locked storage unit, and the northern Maine drivers are required to return to the Bangor locked storage unit. Krauter Decl. ¶ 9; Curtis Decl. ¶ 10; Lowell Decl. ¶ 10; Williams Decl. ¶ 10; A. Abdi Decl. ¶ 10; G. Abdi Decl. ¶ 10; Pepin Decl. ¶ 10.

BAU pays drivers a fixed route fee plus an additional amount for each stop on

6

their route, regardless of how long a driver might be required to wait at each stop. Krauter Decl. ¶10; Curtis Decl. ¶ 11; Lowell Decl. ¶ 11; Williams Decl. ¶ 11; A. Abdi Decl. ¶ 11; G. Abdi Decl. ¶ 11;  Pepin Decl. ¶ 11. Drivers are not paid for the time they wait at a health care facility to deliver prescriptions to the appropriate person or to collect returns. Krauter Decl. ¶10; Curtis Decl. ¶ 11; Lowell Decl. ¶ 11; Williams Decl. ¶ 11; A. Abdi Decl. ¶ 11; G. Abdi Decl. ¶ 11;  Pepin Decl. ¶ 11. When drivers have prescriptions to return, they are not paid anything additional for their travel time to the Westbrook Omnicare facility or the Augusta or Bangor locked storage units. Curtis Decl. ¶ 10; Lowell Decl. ¶ 10; Williams Decl. ¶ 10; A. Abdi Decl. ¶ 10; G. Abdi Decl. ¶ 10;  Pepin Decl. ¶ 10; Krauter Decl. ¶ 9.  BAU requires drivers to use their own personal vehicles to make the prescription deliveries and pickups. Curtis Decl. ¶ 12; Lowell Decl. ¶ 12; Williams Decl. ¶ 12; A. Abdi Decl. ¶ 12; G. Abdi Decl. ¶ 12; Pepin Decl. ¶ 12; Krauter Decl. ¶11. BAU does not reimburse drivers for the costs they incur operating and maintaining their own vehicles. Curtis Decl. ¶ 12; Lowell Decl. ¶ 12; Williams Decl. ¶ 12; A. Abdi Decl. ¶ 12; G. Abdi Decl. ¶ 12;  Pepin Decl. ¶ 12; Krauter Decl. ¶ 11.

BAU requires drivers to comply with its written and unwritten policies, procedures, and directives regarding their duties. Curtis Decl. ¶ 7; Lowell Decl. ¶ 7; Williams Decl. ¶ 7; A. Abdi Decl. ¶ 7; G. Abdi Decl. ¶ 7;  Pepin Decl. ¶ 7; Krauter Decl. ¶ 6. BAU requires drivers to wear clothing that identifies them as a representative of BAU. Curtis Decl. ¶ 13; Lowell Decl. ¶ 13; A. Abdi Decl. ¶ 13; G. Abdi Decl. ¶ 13; Pepin Decl. ¶ 13; Krauter Decl. ¶ 12. Drivers are required to allow BAU to deduct $30

a week from their pay for payroll services from a company called Contractor Management Services. Curtis Decl. ¶ 14; Lowell Decl. ¶ 14; A. Abdi Decl. ¶ 14; G. Abdi Decl. ¶ 14; Pepin Decl. ¶ 14; Krauter Decl. ¶ 13; Williams Decl. ¶ 13. BAU also requires the drivers to permit it to deduct money from their pay to "insure" the prescriptions carried by the drivers. Krauter Decl. ¶ 14; Curtis Decl. ¶ 15; Lowell Decl. ¶ 15. Until November 2013, BAU required drivers to lease scanners.   In November 2013, BAU began requiring the drivers to purchase scanners. Curtis Decl. ¶ 16; Lowell Decl. ¶ 16; Williams Decl. ¶ 14; Krauter Decl. ¶ 15; A. Abdi Decl. ¶ 15; G. Abdi Decl. ¶ 15 and Pepin Decl. ¶ 15.

Drivers report to BAU managers who have supervisory authority over them, including by assigning and directing their work. Curtis Decl. ¶ 9, Lowell Decl. ¶ 9; Williams Decl. ¶ 9; A. Abdi Decl. ¶ 9; G. Abdi Decl. ¶ 9; Pepin Decl. ¶ 9; Krauter Decl. ¶ 8. When drivers encounter any problems, they are directed to contact BAU management. Curtis Decl. ¶ 17; Lowell Decl. ¶ 17; Williams Decl. ¶ 15; Krauter Decl. ¶ 16; A. Abdi Decl. ¶ 16; G. Abdi Decl. ¶ 16; Pepin Decl. ¶ 16. The drivers have no responsibility for billing and invoicing; BAU bills Omnicare directly. Curtis Decl. ¶ 18; Lowell Decl. ¶ 18; Williams Decl. ¶ 16; Krauter Decl. ¶ 17; A. Abdi Decl. ¶ 17; G. Abdi Decl. ¶ 17; Pepin Decl. ¶ 17.

No driver is allowed to provide similar services to other employers. Curtis Decl. ¶ 21; Krauter Decl. ¶ 20; Lowell Decl. ¶ 21; Williams Decl. ¶ 19; A. Abdi Decl. ¶ 20; G. Abdi Decl. ¶ 20; Pepin Decl. ¶ 20.   Drivers are sometimes required to work more than 40 hours per week. Curtis Decl. ¶ 22; Krauter Decl. ¶ 21; Lowell Decl. ¶ 23;

8

Williams Decl. ¶ 20; A. Abdi Decl. ¶ 21; G. Abdi Decl. ¶ 21. BAU never pays any of the drivers overtime rates. Curtis Decl. ¶ 22; Krauter Decl. ¶ 21; Lowell Decl. ¶ 23; Williams Decl. ¶ 20; A. Abdi Decl. ¶ 21; G. Abdi Decl. ¶ 21.

The Plaintiffs declarations show that they are all present or former drivers for BAU, they all transported prescription medications, their pay was similarly structured, they reported to BAU supervisors, and they were required to wear a common uniform. There are few, if any, material variances in how the economic realities factors apply to the members of the collective. The Plaintiffs allege that because they were unlawfully classified as independent contractors, they were all subjected to the same policies and practices of unlawful payroll deductions, failure to pay drivers for all hours worked, and failure to pay overtime. At this initial stage, I conclude that the Plaintiffs have presented sufficient evidence, based on their personal knowledge, to show that they are similarly situated under the FLSA and to justify notice to other workers in the defined collective.

## III.  Mailing and Posting Notice

The Plaintiffs request that their counsel be provided with the names, addresses, telephone numbers, and e-mail addresses of all potential collective action members. The Plaintiffs also request that the notice of the litigation and consent forms be posted at "the Defendants' base location for shuttle and delivery drivers in Westbrook, Maine and at its locked storage units in Augusta and Bangor, Maine in a conspicuous place frequented by shuttle and delivery drivers." Pls.' Mot. for Conditional Certification at 3 (ECF No. 17). The Defendants oppose the Plaintiffs'

request that the notice and consent forms be posted in the workplace, asserting that there is no indication that the other means of notification will be deficient.  Defs.' Opp'n. to Pls.' Mot. for Conditional Certification 13 (ECF No. 25).

I will grant the Plaintiffs' request for the names, addresses, telephone numbers, and e-mail addresses of all potential collective action members. The Plaintiffs must safeguard the current and former employees' contact information and shall not to use the information provided by the Defendants for any purpose whatsoever other than to effectuate the notice authorized by this order.

"Courts routinely approve requests to post notice on employee bulletin boards and in other common areas, even where potential members will be notified by mail." *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 449 (S.D.N.Y. 2011)); *see also Chen v. Oceanica Chinese Restaurant, Inc.*, No. 13-cv-4623, 2014 WL 1338315, at *11 (E.D.N.Y. April 2, 2014) (noting that "courts routinely require such postings, even absent a showing of necessity"). Accordingly, the notice shall be posted as requested by the Plaintiffs and shall remain posted for the duration of the opt-in period.

The Plaintiffs also request that they be permitted to post the notice and consent forms online "with links and identifying information."  Pls.' Mot. for Conditional Certification 3.  The Defendants' object to the request. Defs.' Opp'n. to Pls.' Mot. for Conditional Certification 14. The Plaintiffs have not explained or identified what they mean by "with links and identifying information." At this time,

the Plaintiffs can post the notice and consent forms only on the Johnson, Webbert & Young website.

### IV. Appointment of Counsel

The Plaintiffs ask that I appoint Johnson, Webbert & Young as lead counsel in this case. Unlike class actions under Rule 23, where the rule's requirements are designed to protect the due process rights of unnamed class members who will be bound by the outcome of the litigation, opt-in collective actions include only individuals who have chosen to participate in the litigation and have agreed to be bound by the judgment. Thus, at this time, there is no question for me regarding the adequacy of representation because there is no representation of non-party members.

### V. Appointment of Class Representatives

The Plaintiffs ask that I appoint Robert Curtis and Benjamin Krauter as class representatives. Here again, unlike Rule 23 class certification, there is no requirement that I appoint class representatives. I have already made the determination necessary at this conditional certification stage of the collective action – the named Plaintiffs are similarly situated to those in the proposed class.

### VI. Content of Notice and Consent Form

I have reviewed the Plaintiffs' proposed notice and consent form. Notice and Opt-In Consent to Join Collective Action (ECF No. 17-1). The Plaintiffs shall prepare a new Notice and Consent form that: (1) provides the class definition as follows: "All individuals who have worked, or are working, as shuttle or delivery drivers at Scholarship Storage, Inc. d/b/a Business as Usual and based in the State of Maine

11

since July 23, 2011"; and (2) substitutes the phrase "the Court has authorized the sending of this notice" for the phrase "the court has approved the sending of this notice" in paragraph 5 of the notice.

## VII.   Equitable Tolling of the Statute of Limitations

The Plaintiffs ask me to toll the statute of limitations on the FLSA claims from either the date when the Complaint was filed or from the date when the Motion for Conditional Certification was filed because of the "Defendants' misclassification of its employees." Pls.' Reply in Supp. of Mot. for Conditional Certification 6 (ECF No. 28). The Defendants object to equitable tolling.

A plaintiff requesting equitable tolling bears the burden of showing (1) that he has been pursuing his rights diligently; and (2) that some extraordinary circumstances stood in his way. *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). Instances in which equitable tolling would be applicable include: (1) a claimant has received inadequate notice; (2) a motion for appointment of counsel is pending; (3) the court has led the plaintiff to believe that he or she has done everything required of him or her; or (4) affirmative misconduct on the part of a defendant lulled the plaintiff into inaction. *Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 151-52 (1984) (per curiam).

Here, the Plaintiffs have failed to identify any extraordinary circumstances that might warrant equitably tolling the statute of limitations. Indeed, there is no allegation or showing that circumstances exist that are beyond the potential opt-in Plaintiffs' control and unavoidable despite the exercise of diligence that might

12

prevent such Plaintiffs from asserting their FLSA rights during the limitations period.  Moreover, there is no evidence that any potential opt-in Plaintiff has been, or might be, reasonably induced to delay the filing of his claim.  Nor is there any allegation of affirmative misconduct by the Defendants. On this record, I decline to apply the extraordinary remedy of equitable tolling.

## VIII.   Request for the Defendant to Refrain from Improper Activities

The Plaintiffs also request an order that the Defendants "refrain from engaging in communications or activities that may improperly influence, mislead or discourage putative plaintiffs from joining this action." Pls.' Mot. for Conditional Certification 3.  The Plaintiffs do not allege any specific misconduct by the Defendants related to discouraging potential class members from joining this lawsuit.   The Plaintiffs' proposed notice to the class includes language to the effect that any retaliation by the Defendants is prohibited.  At this time, I find the language in the proposed notice sufficient.

## CONCLUSION

Accordingly, I **GRANT** the Plaintiffs' motion for conditional certification of this FLSA collective action. The Plaintiffs' proposed Notice and Consent Form are approved, subject to the modifications discussed above, and I **AUTHORIZE** the Plaintiffs' to circulate the Notice and Consent Form to all potential class members. I further **GRANT** the Plaintiffs' request to post the Notice and Consent Form at the Defendants' base location for shuttle and delivery drivers in Westbrook, Maine and at its locked storage units in Augusta and Bangor, Maine in a conspicuous place

frequented by shuttle and delivery drivers and the notice shall remain posted throughout the duration of the opt-in period.

I further **ORDER** that the Defendants provide, within 14 days of the date of this Order, the Plaintiffs with the names, addresses, telephone numbers, e-mail addresses, for every current and former person who worked at Scholarship Storage d/b/a Business As Usual as a shuttle or delivery driver in Maine between July 23, 2011 and the date of this order.  The Plaintiffs must safeguard the current and former employees' contact information and shall not to use the information provided by the Defendants for any purpose whatsoever other than to effectuate the notice authorized by this order.

**SO ORDERED.**

/s/ Nancy Torresen
United States Chief District Judge

Dated this 18th day of March, 2015.

14